UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| INNOVATIVE PILEDRIVING PRODUCTS, LLC, and HERCULES MACHINERY CORPORATION, INC., </br></br>    Plaintiffs/Counterclaim Defendants, </br></br>v. </br></br>UNISTO OY, YRJO RAUNISTO and AIRI RAUNISTO, </br></br>    Defendants/Counterclaimants. | CAUSE NO.: 1:04-CV-453-TS |

**OPINION AND ORDER**

The parties' numerous and assorted claims are contained in the Fourth Verified Complaint (28 pages plus attachments) and Second Amended Counterclaims (39 pages). Throughout these claims, and the massive filings by both sides in this lawsuit, emerges one overriding question: Who has the right to manufacture and sell "the Movax" in the United States? Movax is the brand name given to side grip technology for use with vibratory pile-driving hammers. The Movax side grip mechanism was invented and patented as Patent Number 5,568,997 by the Defendant, Yrjo Raunisto, who is a citizen of Finland. He developed the product through his company, Unisto Oy. In October 1998, the Defendants granted the Plaintiff, Innovative Piledriving Products, LLC, (Innovative) the exclusive right to manufacture and sell the Movax technology in North America, Central America, and the Caribbean. Plaintiff Hercules Machinery Corporation, Inc. (Hercules), was granted a non-exclusive license to manufacture and sell the Movax in the same territory.

From the beginning, the relationship between the parties was not without conflict, which prompted discussions about and modifications to the 1998 Exclusive Agreement. The parties

disagree about the meaning and application of their amendments and both sides allege that the other committed numerous breaches of their agreements. For example, the Plaintiffs contend that the Defendants failed to share in advertising costs, overcharged them for parts, sold and serviced the Movax in their territory, and failed to fully and timely pay the commission on a Movax sale. The Defendants, in turn, allege that the Plaintiffs failed to make timely royalty payments, failed to contribute to development costs, manufactured products that were not covered by the license agreement, and established sublicenses of the Movax without their consent. After the litigation regarding these alleged breaches began, the Defendants attempted to terminate all agreements between the parties, including the Exclusive License Agreement, on the basis that the Plaintiffs' breaches were material and uncured. The Defendants communicated their position regarding termination in a letter dated May 13, 2005. With the license agreement no longer in effect, the Defendants argue that it is trademark infringement for the Plaintiffs to continue to use the Movax name.

As part of this lawsuit, the parties also assert violations of trademark and racketeering laws and allege various tort law violations, including breach of fiduciary duty, defamation, and interference with a business relationship.

This matter is before the Court on the Plaintiffs' Motion for Partial Summary Judgment [DE 179], filed on May 1, 2006. In their Motion, the Plaintiffs do not ask for an interpretation of the agreement between the parties regarding the territories in which each may market and sell the Movax, submitting that this part of their agreement is not capable of interpretation without reference to parole evidence. However, regarding other parts of their agreement, the Plaintiffs request that the Court make findings as matter of law before trial and grant summary judgment on several of the

Defendants' counterclaims. Specifically, they request that the Court issue findings as a matter of law: that the 1998 Exclusive Agreement, as amended by the May and September 2002 Agreements, continues to control the relationship of the parties; that the May 13, 2005, letter did not terminate all agreements between the parties; that they have the right to manufacture and sell the Movax SP 80 and SP 100; that they have the right to use the Movax name; that the 1998 Agreement continues to control the price of the Autosteer at cost plus 20%; that Unisto breached the Exclusive Agreement by selling parts to RAM Construction in Kentucky; and that Unisto breached the September 2002 Agreement by failing to timely pay the commission on the sale of a Movax unit in Oregon. The Plaintiffs seek summary judgment on several of the Defendants' counterclaims, as well, on the basis that there is no dispute that they reported all sales and paid all royalties, paid all development costs, did not manufacture or sell any Movax models not authorized by the Exclusive Agreement, did not establish any sub-distributors in breach of the contract, did not make any sales in Unisto's territory, did not misappropriate any trade secrets, and did not aid and abet the breach of a fiduciary duty.

A jury trial is scheduled to begin on July 10, 2006. This Opinion and Order will identify the claims to be tried and will sever other claims for disposition at a later date. It will also dispose of the Plaintiffs' Motion for Partial Summary Judgment.

## MATERIAL FACTS[1]

### A. The 1998 Exclusive Patent License Agreement

Innovative is a limited liability company organized and existing under the laws of Indiana,

---

[1] These facts are not exhaustive. They are intended only to provide enough background to put the parties' claims and the Court's rulings in perspective.

with its principal place of business in Fort Wayne. Unisto Oy, based in Finland, is a manufacturer of pile-drivers. Raunisto, the owner of Unisto Oy, developed and patented a side grip mechanism for vibratory pile-drivers known as the Movax. On October 9, 1998, Innovative, through its owner, John Jinnings, entered into an Exclusive Licensing Agreement with Unisto Oy, Yrjo Raunisto, and his wife, Airi Raunisto, to manufacture and sell the Movax in the western hemisphere, including the United States (the Territory). Specifically, the Defendants granted Innovative the "exclusive right and license to import, develop, manufacture, make, use, market, sell, offer to sell, lease and/or distribute the equipment and any and all of the inventions, improvements, discoveries and designs under, relating to or arising from United States Patent No. 5,568,997 . . . ." (Exclusive Patent License Agreement 2.) Unisto agreed not to sell, rent, or otherwise distribute any products arising from this same patent to any party located inside the Territory.

Innovative agreed to pay the Defendants $25,000 to prepare Movax drawings and plans for it. Innovative also agreed to pay the Defendants $775,000, designated in the Agreement as royalty for the sale of 40 units of the "Movax SP-50D" manufactured by Innovative. Innovative agreed to pay the Defendants a $2,000 royalty for each unit of the Movax SP-50D it sold thereafter. Innovative was to keep accurate records of the number of units sold and provide them to the Defendants at the end of each month along with the royalty payments. The parties agreed to mutually provide all necessary support and assistance for Innovative to "import, develop, manufacture, make, use, market, sell, lease and/or distribute" the equipment and improvements relating to Patent No. 5,568,997. (Exclusive Patent License Agreement 5, Support and Assistance.) However, the Exclusive Agreement did not provide any further specifics regarding each parties' portion of development and other costs.

The Agreement also contained provisions regarding the pricing of parts. The parties were to sell related parts to each other at cost plus 15%, except for an auto steering mechanism, which would be provided at cost plus 20%.[2]

The Exclusive Agreement was to be in effect for the full term of United States Patent No. 5,568,997, which was scheduled to expire March 30, 2014. However, the Agreement provided that either party could terminate the Agreement if the other party breached a material term or condition and failed to cure the breach within thirty days of receiving written notice of the breach, including for failure to make royalty payments. (Exclusive Patent License Agreement 3–4.)[3]

**B.    Modifications to the 1998 Exclusive Agreement**

The Defendants contend that, by exchanging letters, the parties made modifications to the 1998 Licensing Agreement regarding the scope of the license and the parties' share of development costs. The Defendants maintain that these changes were intended to address areas of the Exclusive Agreement where the Innovative was not in compliance. The parties agree that there were also more formal amendments to the Agreement in May and September 2002. The May 2002 Agreement was only temporary and contemplated that after its expiration on September 30, 2002, the parties would sign a new agreement.

In September, the parties signed a "Renewed License Agreement." The Renewed Agreement gave Innovative the right to manufacture and sell the Movax SP 40–SP 60 side grip pile driver in

---

[2] The Autosteer system is a computerized steering option available for the Movax. It is not a necessary component to operate the Movax, but is enhances operator control.

[3] Neither party invoked this provision before the lawsuit began. As will be discussed *infra*, the Defendants attempted to use this provision to terminate all agreements on May 13, 2005, after the lawsuit began.

the western hemisphere and the right to sell (but not manufacture) the SP 80. Also, in a departure from the original agreement granting Innovative exclusive rights, the Renewed Agreement granted Unisto the right to establish dealers or agents to sell Movax products in certain states. Unisto was to pay Innovative a 5% commission on any sale by an agent, which was intended to reimburse it for advertising costs. The Renewed Agreement provided the following regarding each party's right to sell the Movax in the Territory:

> In any state in which [Innovative] does not sell a unit during the calendar year Unisto can ask for the right to sell in that state.
> In any state in which Unisto or its agent does not sell a unit during the calendar year, [Innovative] can ask for the right to sale in that state.
> If there is no sale also on next year (now in 2 years) the state will belong entirely to another pardner [sic].

(Renewed License Agreement 1.)[4]

Pricing was also addressed in the September 2002 Renewed Agreement. Unisto agreed to sell Innovative SP 40–SP 60 units and spare parts for distributor price minus 15% and to sell "other parts" and "components of Units" at "distributor price." (Renewed License Agreement 2.) The Agreement did not specifically discuss Autosteer pricing.[5]

The May and September modifications were intended to replace the 1998 Exclusive Agreement as to the terms addressed in those agreements.

---

[4] The meaning of this provision is the subject of much dispute and is central to the resolution of several of the parties' claims.

[5] Autosteer pricing is one of the disputed issues in this case. The Defendants maintain that the September 2002 Agreement changed the Autosteer price to the distributor price. The Plaintiffs disagree and contend that although Unisto proposed a change in pricing for Autosteer, that change was rejected by the Plaintiffs and was not included in the final modifications and that the 1998 Agreement continues to control the Autosteer price.

### C. Innovative's Sublicense to Hercules

On August 29, 2002, Innovative gave Hercules the right to manufacture and market the products that were the subject of the Exclusive License Agreement by executing a Non-Exclusive Patent Sublicense Agreement. Jinnings, who owns Innovative, is also the President of Hercules. Under the Exclusive Agreement, Innovative could only grant such sublicenses with the Defendants' written approval. (Exclusive Patent License Agreement 7, Assignment.) The Defendants consented to the Sublicense Agreement on November 2, 2002.

### D. Agreement Related to the Lawsuit

The Plaintiffs filed this lawsuit after Unisto took steps to compete with Innovative and Hercules to sell the Movax in the United States. The Plaintiffs contend that this competition by Unisto violates the Exclusive Licensing Agreement and Sublicense Agreement. As part of their lawsuit, the Plaintiffs requested a preliminary injunction preventing the Defendants from selling the Movax in the Territory covered by their Agreements.

On April 6, 2005, the parties filed a joint motion to withdraw the request for preliminary injunction. This motion was predicated by a Temporary Agreement, signed on the same date, in which the Defendants agreed not to compete against Hercules during the course of the litigation with respect to the sale, lease, or distribution of the side grip mechanism within the Territory covered by the original Exclusive Licensing Agreement.

On May 9, 2005, the Defendants filed their Answer and Counterclaims, alleging numerous breaches of contract against the Plaintiffs. On May 13, 2005, the Defendants, through their attorney, sent a termination letter to Innovative and Hercules's counsel advising them that "any and all

7

agreements between the parties are now terminated and canceled." The Defendants cited the Plaintiffs' late payments, failure to provide reports, and appointment of subdistributors without Unisto's approval as examples of the "cumulative breaches of contract" that were "so extensive that we see little or no possibility of cure." The Defendants offered that to make them whole, Innovative would have to provide reports, relinquish territory in which it had failed to make a sale in the past two years, transfer the Movax trademark application to Unisto, and pay its attorney fees associated with the work required to obtain compliance with the contract. The Defendants' letter further provided that, notwithstanding any attempt to cure, Unisto was entitled to terminate the agreement because the Plaintiffs' breaches went to the essence of the agreement. As a result of the termination, Unisto demanded that Innovative and Hercules immediately stop making, using, selling or offering to sell the Movax SP 40–SP 100 or any other equipment infringing on its patent and stop using the Movax trademark.

On September 1, 2005, the Defendants moved to add counterclaims against the Plaintiffs for further breaches of contract, trademark infringement and unfair competition, false advertising, aiding and abetting breach of a fiduciary duty, and tortious interference with a business relationship. Some of these claims arise out of the fact that, after May 13, 2005, the Plaintiffs no longer had a license authorizing it to use the Movax trademark or name.

## DISCUSSION

**A.      Separate Trials**

Under Federal Rule of Civil Procedure 42(b) the Court "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order

8

a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues . . . ." Fed. R. Civ. P. 42(b). In furtherance of convenience, and to promote expedition of claims, the trial scheduled to begin July 10, 2006, will be limited to the following: (1) claims involving breach of contract as set forth in the Fourth Verified Complaint and Second Amended Counterclaims; (2) the Defendants' counterclaim for fraud in the inducement (Count II); and (3) the Defendants' counterclaims regarding trademark infringement and unfair competition (Counts III, V, and VI).

For convenience and economy, the Plaintiffs' remaining claims will be severed from the July 10 trial: interference with a business relationship (Count VII); defamation (Count VIII); breach of warranty (Count IX); Racketeering Influenced and Corrupt Organization Act (Count X); and civil action by a crime victim (Count XII). The Defendants counterclaims for false advertising (Count IV), misappropriation of trade secrets (Count VII), conversion (Count VIII), aiding and abetting breach of fiduciary duty (Count IX), and interference with a business relationship (Count X) are also severed. The Court will not address any dispositive motions regarding these claims until after the claims designated for the first trial are resolved.

**B.      Summary Judgment Standard**

The following principles of summary judgment are particularly applicable to this case, fraught as it is with factual disputes:

> [S]ummary judgment briefs that present multiple versions of the facts arouse our attention at the outset because under the Federal Rules of Civil Procedure, a judge may grant summary judgment for a moving party only where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Because our only task upon review of a summary judgment motion is to

9

determine "whether there is any material dispute of fact that requires a trial," (*Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir.1994)), multiple versions of the facts increase the chances that at least one of those conflicting facts will be material to the outcome of the case.

*Pourghoraishi v. Flying J, Inc.*, ___ F.3d ___, 2006 WL 1028685, *1 (7th Cir. April 20, 2006).

## C. Terms of the Parties' Agreements

Under Indiana contract law, the construction of an unambiguous contract is a question of law for the court to decide. *The Beanstalk Group, Inc. v. AM Gen. Corp.*, 143 F. Supp. 2d 1020, 1026 (N.D. Ind. 2001). However, "[i]f reasonable men would find the contract susceptible of more than one construction, ambiguity exists making summary judgment inappropriate, it being the responsibility of the trier of fact to ascertain the extrinsic facts necessary to interpret the contract." *Ancich v. Mobil Oil Corp.*, 422 N.E.2d 1320, 1321–22 (Ind. Ct. App. 1981). "Where a contract is ambiguous . . . and its meaning cannot be gleaned from the four corners of the instrument, the intention of the parties is a question of fact and resort to extrinsic evidence is proper." *Anderson v. Horizon Homes, Inc.*, 644 N.E.2d 1281, 1290 (Ind. Ct. App. 1995).

Because of ambiguity in the application of the relevant agreements in this case, the Court does not make any findings regarding breaches of those agreements and all such issues are reserved for the finder of fact. Related to these factual findings is whether the Defendants' May 13, 2005, letter actually terminated all agreements between the parties as it purported to do. Because it has not been determined that there have been any breaches by the Plaintiff, much less breaches that would, as the Defendants claim, justify termination, the Court cannot make this determination as a matter of law.

Under the Exclusive Agreement, either party could terminate the Agreement if the other

party breached a material term or condition and failed to cure the breach within thirty days of receiving written notice of the breach. In addition, "[a] party first guilty of a material breach of a contract may not maintain an action against the other party or seek to enforce the contract against the other party should that party subsequently breach the contract." *Licocci v. Cardinal Assocs., Inc.*, 492 N.E.2d 48, 52 (Ind. Ct. App.1986).

> [Under the Restatement of Contracts], [i]f the failure of one party to perform . . . is so material that it will or may result in the other party not receiving substantially what he bargained for, the duty of the injured party is discharged and he is, thereby, wholly excused from carrying out his undertaking. On the other hand, if the failure to perform . . . is not of that character, the injured party retains his duty to render his promised performance. There is still a breach of contract, but the innocent party must recoup his loss for such an immaterial breach through one of the procedural devises designed for that purpose. The application of this principle prevents unreasonable forfeitures by the defaulter and, at the same time, is not unfair to the other party.

*Frazier v. Mellowitz*, 804 N.E.2d 796, 802 (Ind. Ct. App. 2004) (ellipses in original). "This court has long held that whether a party has committed a material breach is a question of fact, the resolution of which is dependent on several factors. *Id.* (citing *Titus v. Rheitone, Inc.*, 758 N.E.2d 85, 94 (Ind. Ct. App. 2001), and *Goff v. Graham*, 306 N.E.2d 758, 765 (1974)). Accordingly, a jury will determine whether the Defendants were justified in terminating the contract for the Plaintiffs' purported breaches and, if they were, whether the May 13, 2005, letter was sufficient to do so under the terms of the Agreement.

Regardless of the jury's determination on the above issues of material breach and contract termination, the Temporary Agreement signed by the parties on April 6, 2005, continues in effect. There is no evidence to suggest that the Plaintiffs breached that contract (by seeking a preliminary injunction or moving for continuance of trial) such that the Defendants are no longer bound by their commitment to refrain from competing with the Plaintiffs during the pendency of this lawsuit. The

Temporary Agreement is separate and distinct from all other agreements between the parties and has no bearing on those agreements.

**CONCLUSION**

For the reasons stated above, the trial scheduled to begin July 10, 2006, will be limited to the following: (1) claims involving breach of contract as set forth in the Fourth Verified Complaint and Second Amended Counterclaims; (2) the Defendants' counterclaim for fraud in the inducement (Count II); and (3) the Defendants' counterclaims regarding trademark infringement and unfair competition (Counts III, V, and VI). All other claims are severed from the July 10 trial.

In addition, the Plaintiff's Motion for Partial Summary Judgment [DE 179] is DENIED as to those claims proceeding to trial on July 10, 2006. It is DENIED WITHOUT PREJUDICE as to the severed claims, with leave to reassert dispositive motions after judgment is entered on those claims scheduled to proceed to trial on July 10, 2006. The Court REITERATES that the parties' April 6, 2005, Temporary Agreement is still in effect.

SO ORDERED on June 30, 2006.

                                          s/ Theresa L. Springmann
                                          THERESA L. SPRINGMANN
                                          UNITED STATES DISTRICT COURT